Good morning, may it please the Court. I am James Laughlin, and I represent the appellant, Nicholas Garcia. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. You try to keep track, and I'll try to remember. I will. Thank you, Your Honor. Judge Reel procedurally erred at Mr. Garcia's resentencing when he failed to correctly calculate the advisory range, failed to use the advisory range as a starting point and initial benchmark for sentencing, and most significantly, when he failed to adequately explain why he reimposed the same 51-1 sentence despite a significant reduction in the advisory range. Overall, the record reflects that Judge Reel did not give the guideline range due consideration at the resentencing. In fact, the government encouraged that. At the original sentencing, the government successfully sought a two-level adjustment that Mr. Garcia vigorously disputed in the District Court and on appeal. With that adjustment, the advisory range was 51 to 63 months, and Judge Reel followed the government's recommendation for a 51-month low-end sentence. This Court remanded, vacated the sentence to remand it without reaching the issue of whether that two-level enhancement was proper. When the case went back down again, the government's position for resentencing was basically, we don't want to have to prove up this enhancement by a preponderance of the evidence, and we don't want to try to defend that on appeal, but we want the same sentence anyway. It therefore told Judge Reel that he could reimpose the same 51-month sentence by technically not applying this adjustment, but imposing the sentence at the high end of the range instead of the low end. And that's what Judge Reel did. The government's tactic in Judge Reel's possible acceptance of it without explanation undermines the public trust in fair sentencing. For one thing, it suggests the sentencing guidelines aren't important if a 20 percent reduction in the advisory range is meaningless and not worthy of discussion. What happens also creates the impression that the government gets whatever sentence it wants, whether it's willing and able to prove up a sentencing enhancement or whether it's unable or unwilling. What exactly was the sentencing enhancement at issue? It was a two-level addition for more than $10,000 in income derived from criminal activity. And what would it have taken to prove that up? The main they would have had to prove that he actually earned income of more than $10,000 was derived from criminal activity. The main objection to that was the government's theory was always that the way he was a stock promoter, he got paid with stock, and that stock was given issued to third parties and the government contends that issuing that stock to third parties and then selling it was violations of the security laws. One issue was if they really met their burden to show that, but the more significant factor was that even if that was the case, they never showed that he earned income from criminal activity. Only the manner in which he was paid was illegal. And it's not cited in the briefs, but in the sentencing papers, there's a case from this court called Ford, which said that the act of evasion cannot be the illegal activity that that enhancement applies to. It supports that enhancement. Right. And did we reverse based on that enhancement the first time, or why did we reverse the first time? This court reversed because there was no explanation at all of the first sentencing. And, therefore, it reversed on that basis and said that it didn't need to reach the two-level enhancement issue at all. Now, in this case, he did give some explanation, but you're saying it didn't – it failed to address certain evidence you put in in mitigation and that it wasn't adequate given the circumstances of this sentencing. I mean, how much is necessary at this point under the law? Well, I think that it – it certainly – there's more here than was there last time, which was nothing. Right. But I think the key point we're trying to make in this case is that under the circumstances here where you have a significant reduction in the advisory range, and that's a key factor in sentencing, a 20 percent reduction, coupled with other mitigating evidence that wasn't before the court before, that just merely reimposing the same sentence without any explanation as to why this significant reduction in the guideline range makes or doesn't make a difference, that's inadequate. But isn't that the nature of a range? I mean, Judge Real did pick a sentence within the applicable range. I mean, it's not a hard and fast, precise number. He's given a choice of, what was it, 43 to 51, or is that right, or 41 to 51? True, true. The range went from the first. So he was within the range, and he's given discretion by virtue of the fact that it's a range. That's true, Your Honor, but he also has to explain the sentence within the range. Okay, and he did, like Judge Wardlaw said. I mean, he offered some reasons. He took into account the guy's bad record. It was a sophisticated scheme. You know, he gave his reasons by it or not by it. But what I was going to say is he has to offer an explanation that serves two purposes, sufficient to allow this Court to conduct a meaningful review, and sufficient second, to promote the perception of fair sentencing. Now, this Court is in a position to decide whether, given this record, it can decide whether Judge Real had a reasoned basis for imposing the same sentence despite the significant reduction. Why aren't the reasons that I've just enumerated, he's got a bad record, it was sophisticated, it was over a million dollars in loss, why isn't that sufficient for us to review what he did? Because it's not connected to the reduction in the range. I think that under the facts of this case where there's such a significant reduction in the range, it requires some kind of explanation as to why that is not relevant. I don't know of any case that says anybody has to do that. Well, I mean, I think there's nothing to explain why he imposes the sentence he does. And he says, I considered the 3553 factors, I considered his prior record, I've considered the sophisticated way it's done, I've considered that it's over a million dollars in loss. And then implicitly, he does it explicitly, but implicitly he doesn't find your mitigation to be all that mitigating. And so he imposes the sentence. Now we can agree or disagree or say it's reasonable or not, but I don't think he didn't give us enough to go on. Well, Your Honor, the reason, and I agree, there's not a case I could find directly on point because I think the situation is relatively rare where it's just a case   of置 If he had said, first of all, there's a separate issue of when he said it, he should have started out the proceedings by going through the guideline range, but ... He's got to say, I've done the range and here's my ... Why don't you just answer Judge Silverman's question instead of switching to when to answer what you believe he should have said. Very well. I believe ... And which issue do you believe he should have said it about? You've raised three issues. Correct. All right. What is it — what do you think he should have said about each of those issues that he didn't say? I think that he, with regard to the sentencing range, he should have acknowledged not only the new range, but that it was significantly lower than the old range, and then gone on to explain, despite this reduction in the range, I believe that a 51-1 sentence is appropriate because that would acknowledge that he understood the significance in the reduction of the range and took that into account at sentencing. Even though he used the lower range, he has to say, I understand I'm using the lower range. I understand the lower range, and here's why the range doesn't make a difference. It's not enough that he uses the lower range. No. No, because it's the explanation ... You wanted two minutes. You're down to a minute and 47 seconds. Okay, then I'll reserve the remainder of my time as well. Thank you. Good morning, Your Honors. May it please the Court. Kerry O'Neill on behalf of the United States. The defendant raises three procedural error claims that cannot meet this Court's high standard for reversal under plain error review. Rather than addressing those three in order, I'll start by addressing some of the larger themes presented just now by defense counsel. I think that despite defendant's arguments otherwise, both this Court's precedent in Munoz-Camarena and the Supreme Court's precedent in Gall show that what happened here on resentencing was not anything that infected the proceedings with a lack of public integrity or a lack of fairness. Munoz ... Counsel, this bothers me because, I mean, it's almost like he paid lip service to the minimum requirements of the sentencing and he did sentence within the new guideline range, but actually he let the government get away with an enhancement without having to prove the enhancement because he sentenced the defendant to the exact same sentence he had received before. And it just ... To me, it doesn't survive the smell test. There's something wrong with this sentencing. And I think that's what the Court was talking about in Rita, that it has to satisfy the appellate court, that the judge has considered the party's arguments and there's a reasoned basis for exercising his own legal decision-making authority. I mean, to me, you didn't get to that level of Rita. Okay. I understand Your Honor's point. I think that ... Well, it's also that I should say, before you get to the specifics, it's Judge Rioux, it was certainly difficult to respond to in light of the government's behavior during the sentencing, where they said, we just want the same sentence and then say whatever will justify it. And then at the end, when Judge Rioux didn't say the right things in the government's view, the government then ended by saying, now this is what you mean, isn't it? You've considered these things. And they said, sure. From beginning to the end of the sentencing, it was the government telling Judge Rioux what he was supposed to do and say. Well, Your Honor, I understand the Court's position. I was not the AUSA who handled this before the district court. But I think when one ... I know I would have been a little harsher had you been the one who did this, to just give him the same sentence and now give some reasons. Well, Your Honor, I think there are a couple of things that the Court can consider. I think when one looks at the government's sentencing papers on resentencing, they are full, they are complete. I believe that they are robust enough to support the 51-month sentence, regardless ... They very well may be. The judge didn't answer the changed circumstances. He didn't ... He even, at one point, had the guidelines range incorrect. And that's the minimum. You have to correctly calculate the guidelines range. I mean, the papers ... I'm not going to fault the AUSA, because I know what it's like to ... I mean, I'm sure he was in good faith believing that 51 months was the appropriate sentence. And I know what it's like to have to deal with a judge who's not doing his job properly. But ... So I'm not going to fault the AUSA. But I'm still not convinced that the judge did correctly do his job. I understand. Well, let's get down to the third of the reasons. The third of the reasons was the rehabilitation and the rather unusual letters that he had from the prison authorities. Yes, Your Honor. That's one factor that can be taken into account. What did Judge Rios say about that? He did not specifically address that element of the mitigating ... I mean, he did not address it. He did not address that element of the mitigating evidence. But I think that this Court's precedent in Rita and Ruiz-Apollonio clearly state that, especially when this Court is reviewing on plenary review, the district court judges don't have an obligation, and this is language from Cardi, to specifically respond to every aspect of the defendant's request for a lower sentence. Well, it's ... I misunderstood Judge Reinhart's question. Are you talking about the psychology of the letters from the psychologist or something? No. I believe Judge Reinhart was referring to some of his ... No, that's the three ... If you ridicule those, I mean, he did comment on it. No, those he did. Whether you consider that, whatever you consider that comment, he commented. Whether that's a sufficient explanation is a different thing. But I'm not talking about that. There were three points, it seems to me, that he raised. Which letters didn't he comment on? I believe he was commenting on letters that he had received from doing work while he was in prison. So these, the defendant offered them as sort of post-offense, post-sentence rehabilitation. And I think, Your Honors, under this Court's precedent, United States v. Pepper, it's clear that, sure, those can be considered in mitigation. But truly, the most persuasive thing in that type of setting is post-offense rehabilitation prior to law enforcement contacts. Here, the fact that he has one or two letters from his prison work supervisors, I think Judge Real listened to the evidence. He considered it. It was fully on the record. And under this ... The question is he didn't comment on it. That we agree on? That we agree on. But I don't believe he was required to comment on it, Your Honor. Well, it says that in CARDI that when a party raises a specific non-frivolous argument, the judge should normally explain why he accepts or rejects the party's position. That is true, Your Honor. But I think under this Court's cases and under United States v. Rita, this type of mitigating evidence is offered frequently. I don't think this is a case like Mota, which the defendant cites, where there's a much tighter nexus between the crime that the defendant was convicted of and the mitigating evidence brought forth. That was a child pornography conviction. The defendant brought forth evidence of his own abuse. He had absolutely no prior convictions. There, this Court said on plain error review, the District Court should have further articulated reasons why it was rejecting the defendant's mitigating evidence. I think here, on this record, there's nothing to suggest that Judge Real didn't listen to or consider the mitigating evidence. And the government did everything that it could. I understand it's at the conclusion of the sentencing. But it did everything it could to make sure that Judge Real indicated on the record whether or not he rejected or accepted the defense arguments and mitigation. And in Ruiz-Apollonio, this Court said … Oh, it didn't do everything it could. It could have said to Judge Real, you know, you didn't comment on the rehabilitation, which is one of the three arguments. It could have done that. It gave him lots of advice and guidance. Well, it didn't specifically break out the three arguments. It didn't say specifically. I mean, it didn't mean when you say specifically. It did not. It did not. The government did not. But the government did say, are you rejecting the defendant's arguments for a variance, a downer variance? And that's the same question defense counsel asked the District Court in Ruiz-Apollonio. Let me ask you, not specifically to this case, but just in general, so I know, you know, we understand what the judge's obligations are. Does he have to respond to every piece of evidence, or does he have to respond to the arguments sort of holistically? I mean, what is the judge's obligation? If there are 15 witnesses, does he have to mention every witness by name, or? I don't believe so, Your Honor, and I don't have a case that says that the District Court judge has to do that. District Court judges have flexibility. But it would have been enough to say, look, these 15 people testified that the guy was rehabilitated. I don't buy it, or I don't find it mitigating, or whatever. Well, in that instance, the hypothetical that you're posing, if you have 15 witnesses, perhaps there's more of an onus on the District Court judge to respond specifically to their testimony. This is not a case where there's an overwhelming amount of mitigating evidence on the record. And I think under Rita, and Ruiz-Apollonio, and Amezcua-Vazquez, that here, and Valencia-Barrigan, here, the procedures were followed. There were minor errors, but there are harmless errors under this Court's precedent, including specifically in Nuno's Camarena, footnote 5. And here, the District Court did more than enough on a plain error review, I believe, to satisfy this Court, in my opinion. I'll also note that the defendant is requesting that the District Court specifically state on the record why his sentence did not move down by 20% in lockstep with the reduced guideline range. But under the United States Court's precedent in Gall, the Court specifically rejected this idea of a rigid mathematical proportional justification for variances and departures. And I think in light of that, especially because this is plain error review, it's difficult to see how the District Court erred here by not specifically explaining why his sentence did not proportionally move down, especially when he's still sentencing within the undisputed guideline range, and acknowledges specifically that he's sentencing at the high end of it. But the first time he sentenced, he included the sentence enhancement, and he arrived at the same sentence both times. I don't see how that's possible. Well, Your Honor, I think the guidelines are only... I don't see how it's possible to have the sentence be the same. Well, Your Honor, I think sentencing is not a mathematical, algebraic formula. No, I'm not saying by mathematics. I'm saying holistically the whole situation had improved. Had improved? Had improved. There wasn't the enhancement. He came up with evidence of mitigation. He had a job in the prison, and he was doing it well. He's in a better position as someone to pass judgment upon than he was before. Don't you agree with that? Yes. Yes. If one looks objectively, there are factors indicating that he would be in a better position. But the district court does not have... Why does he deserve the same sentence? Because perhaps his mitigating evidence isn't strong enough to outweigh his 17 prior convictions. What about the lack of the enhancement? Well, I think that still the court can consider the manner in which the defendant operated his scheme, regardless of whether or not the enhancement applies, under the 3553A factors. This is not a guideline-only procedure. And once the guidelines are undisputed, as they are, then the court turns to the 3553A factors. May I ask you, you've exceeded the time, but I just want to ask you quickly, if we were to agree with them, would there be any reason not to send this to a different judge? Would you send it back? I don't think that Judge Real did anything here that violated the spirit and expressed instructions of the mandate from the prior sentencing. And I'm getting that language from this Court's opinion, United States v. Paul. I think that Judge Real was told to more specifically explain the sentence that he arrived at, and that is what he did here. I don't think... This is your second trip here. I'm thinking maybe we ought to give somebody else a chance if it goes bad. Well, that's not the standard, Your Honor. The standard is... Well, neither is it the standard, neither is what he said the standard, that the judge has to have done something improper. It's a question of public perception, and it's a question of how much judicial time will be wasted. You don't... We've been trying to be very careful to say that because it's assigned to another judge, we're not saying the judge has committed error in his personal approach. We're saying that there would be... It would look to the public as if it were a fairer process if we thought that the judge would have difficulty, as Judge Real seemed to have, in arriving at a different sentence than the one he had originally given. Well, Your Honor, I think under this Court's precedent, especially United States v. Gray, that even if there's a third reversal of sentence, that does not mean in and of itself that reassignment is required. You really care one way or the other who sentences this guy if it goes back? Frankly, Your Honor, if the defendant wants to make another shot at it with a different judge and with the probation office's recommendation for a much, much more higher sentence, then that's, you know, that's not up to me. That's their tactic, and that's this Court's opinion. I don't think on this record, under this Court's precedent, in the absence of bias and where Judge Real obviously made a much greater attempt to follow the procedures of this Court, that reassignment is necessary. It's duplicitous. There's going to be now, you know, three sentencings, over 200 pages. Duplicitous or duplicative? Sorry. Duplication. Sorry, Your Honor. It would be duplicative. I think it would entail waste. I don't think on this record that this case rises to the level of the slew of cases that defense counsel included at the end of his reply brief where there have been cases reassigned from Judge Real. Your Honor, it's the government's position that the defendant cannot satisfy the plain error standard of reversal here, and that reassignment should not be, is not required. Thank you, counsel. Thank you. We'll give you your full two minutes. That's okay, Your Honor. I have nothing to add unless the Court has questions. Do you seriously request reassignment in this case? Yes. Okay. And I also wanted to, on behalf of Mr. Garcia, thank this Court for expediting his appeal and to point out that he has about six months left on his sentence and ask the Court to consider that. I thought it was less than that. Isn't he ever scheduled to release the case? February 20th. Oh. Under which? Under the 12-month sentence? I don't know. The 51-month sentence. Okay. Sorry, wrong case. All right. Thank you very much. Thank you, Mr. Wright. Thank you. Thank you. That's the one. All right.
judges: Reinhardt, Silverman, Wardlaw